UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROSEMARY J. BENT,            )
                             )
        Plaintiff             )
                             )
v.                           )      No. 1:13-cv-243-JDL
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,  )
                             )
        Defendant             )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in his determinations of the nonseverity of her anxiety and depression, her residual functional capacity ("RFC"), and her transferable skills. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 21) at 1-18.[2] I agree, and recommend that the court find, that reversal and remand are warranted on the basis of error in determining the plaintiff's transferable skills. I discern no reversible error in the administrative law judge's handling of her mental impairments or RFC.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 13, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] At oral argument, the plaintiff's counsel withdrew a further contention, *see* Statement of Errors at 7-9, that the administrative law judge failed to evaluate his client's lumbar spine when determining whether her impairments met or equaled the criteria of Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings").

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 13; that she had severe impairments of status-post thoracolumbar fusion, degenerative changes and disc protrusions of the lumbar spine, status-post bilateral ankle fractures, right thumb osteoarthritis, hernia, and obesity, Finding 3, *id*. at 14; that she retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she could not climb ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, and climb ramps or stairs, Finding 5, *id*. at 16; that, considering her age (48 years old, defined as a younger individual, on her alleged disability onset date, February 19, 2010), education (at least high school), work experience (work skills from past relevant work), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 20; and that she, therefore, was not disabled from February 19, 2010, through the date of the decision, April 25, 2012, Finding 11, *id*. at 21. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 4 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 4 of the sequential evaluation process, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would

permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Step 2: Mental Impairments

The record contains two expert evaluations of the severity of the plaintiff's mental impairments, that of agency examining consultant Adrienne J. Butler, Ed.D., dated June 25, 2010, and that of agency nonexamining consultant Leigh Haskell, Ph.D., dated July 19, 2010. *See* Record at 462-66, 477-89.

Based on a review of records of the plaintiff's primary care provider, Lisa Grant, N.P., for the period from March 24, 2010, to April 7, 2010, and an interview and mental status examination of the plaintiff, *see id*. at 462-65, Dr. Butler concluded that she would be able to understand tasks consistent with average intellectual ability, was "apt to have difficulty with tasks requiring abstract reasoning and need enhanced verbal mediation," was "apt to need reinforcement and repetition of new verbal information in order to acquire, retain and recall it[,]" did "have observable intermittent attention and concentration difficulties and would likely have difficulty sustaining prolonged task focus[,]" was "apt to be able to socialize adequately in a small familiar setting" but was "apt to experience heightened anxiety in large group or public settings[,]" and "would likely have problems with adaptation should speeded or pressured performance be required[,]" *id*. at 465-66.

With the benefit of review of the Butler report and an April 7, 2010, office note of Grant, *see id*. at 489, Dr. Haskell concluded that the plaintiff had severe mental impairments, causing mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with

4

insufficient evidence of episodes of decompensation, *see id*. at 477, 487; *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.") (citation omitted).

Dr. Haskell completed a mental RFC evaluation stating that the plaintiff could "understand and remember simple, repetitive tasks and procedures[,]" could "be reliable and sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week[,]" could "interact with co-workers and supervisors in a normal work setting" but could "not interact with the public for extended periods of time due to her anxiety in public places[,]" and could "adapt to occasional and routine changes[.]" Record at 493.

The administrative law judge rejected the Butler and Haskell conclusions that the plaintiff's mental impairments were severe. *See id*. at 14-15. He noted that the plaintiff had received little more by way of treatment for those conditions than a prescription medication from her primary care provider, and, although she reported that she received counseling only once a month because she could not afford more sessions, there was little record evidence of that counseling. *See id*. at 14. He explained that he rejected Dr. Butler's opinion that the plaintiff "would require what amounts to simple, routine and repetitive tasks, free of a fast-paced production and no more than occasional contact with the public," because she "did not have the benefit of the entire record for review, including subsequent testimony of the [plaintiff,]" and "based the opinion on a single examination." He elaborated:

> The [plaintiff] testified that she attended night school during the period at issue to receive her high school diploma. Moreover, [she] currently attends a transitioning program to attend Beal[] College for a career as a medical transcriptionist. [She] testified that she does well in the program and takes a writing class, an English

> class and a computer class. Further, she is preparing to attend a schedule consisting of two three-hour classes per day at two days a week. As such, the undersigned finds that [she] is not severely limited in her mental capacity to attend, concentrate and complete tasks, despite the single examination of Dr. Butler. Further, Dr. Butler opined that the [plaintiff] is apt to experience anxiety in large groups or public settings, however, the record reflects little support for such an opinion other than the [plaintiff's] subjective statements. One would expect to see complaints of such to a treating physician or psychologist, yet a review of the record finds few, if any, complaints to that [e]ffect.

*Id*. at 14. He accorded little weight to the Haskell opinion because she relied on the Butler opinion, "again without having the benefit of subsequent information in the record." *Id.* at 15 (citations omitted).

He concluded that the plaintiff had only mild restrictions in her activities of daily living, social functioning, and concentration, persistence, or pace, and had experienced no episodes of decompensation, as a result of which her mental impairments were nonsevere. *See id*. at 15; *see also, e.g.*, 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). With respect to social functioning, he stated: "[T]he evidence in the record, including the testimony of the [plaintiff] at the hearing, shows that [she] is, for the most part, capable of interacting independently, appropriately, effectively, and on a sustained basis with other individuals." Record at 15. With respect to concentration, persistence, or pace, he noted: "[T]he evidence in the record, including the testimony of the [plaintiff] at the hearing, shows that [she] is, for the most part[,] capable of sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*.

The plaintiff argues that these findings are unsupported by substantial evidence because the administrative law judge does not explain what record evidence, other than the plaintiff's testimony, contradicts Dr. Butler's opinion, and there is no inconsistency between that testimony and the Butler opinion. *See* Statement of Errors at 4-5. She contends that her ability to finish her

high school diploma through night school and attend a transitional program one day a week, coupled with her mere intention to enroll in college and attend classes two days per week, do not contradict Dr. Butler's expert observations and testing and, in any event, the administrative law judge impermissibly rejected expert opinion and interpreted raw medical evidence to arrive at that conclusion. *See id*. She adds that the administrative law judge also exceeded the bounds of his competence as a layperson in assuming that any social difficulties would be reflected in complaints to treating sources. *See id*. at 5. Finally, she argues that the fact that Dr. Butler was a one-time examiner who did not have the benefit of review of the plaintiff's testimony was not a valid basis to reject her opinion because the same is true of any agency examining consultant. *See id*. at 6-7.

She points out that the asserted error is not harmless because, given the administrative law judge's finding that she was capable of only sedentary work, she would have been deemed disabled as of age 50 pursuant to the so-called "Grid," Appendix 2 to 20 C.F.R. Part 404, Subpart P, if she had been limited to simple tasks. *See id*. at 6; *see also* Grid § 201.12.

As the commissioner counters, however, *see* Defendant's Opposition to Plaintiff's Statement of Specific Errors ("Opposition") (ECF No. 23) at 4, the administrative law judge made a reasonable, commonsense judgment that the plaintiff's actual accomplishments and perseverance during the relevant period were inconsistent with Dr. Butler's opinion that she had severe limitations in her ability to concentrate and complete tasks, which was based on a one-time examination. As the commissioner notes, *see id*., the plaintiff testified that she had been able to obtain a high-school diploma in December 2011 (after Dr. Butler's examination) and then take college-transitional classes that, by her own admission, were "going well[,]" Record at 31-32, 36, 55. She testified that she expected to have no difficulty with the college classes that she

intended to take to be able to become a medical transcriptionist. *See id.* at 35. The plaintiff points out that she told her orthopedic surgeon, Julie A. Long, M.D., on April 3, 2012, that she was concerned about her ability to complete the college courses because of pain. *See* Statement of Errors at 4; Record at 745. However, even assuming that, by this, the plaintiff meant that she was concerned that her pain would cause difficulty concentrating and persisting, any such difficulty would be ascribable to physical, rather than mental, impairments.[3]

The plaintiff further contends that an ability to take classes a few hours a week is not evidence of an ability to persist and concentrate at a full-time job. *See* Statement of Errors at 4. Her counsel emphasized, at oral argument, that she testified that she intended to work at home so that she could take breaks as needed. *See* Record at 35 ("The reason why I picked this is because it's a job I can do at home. I can – if I need to lay down, I can lay down. If I need to stand, I can stand. I'm not on a – somebody saying when I can go on break.").

Yet, as the commissioner suggests, *see* Opposition at 6-7, the administrative law judge did not find that the plaintiff's classwork translated into an ability to perform a full-time job. Rather, he made a commonsense judgment that the restrictions described by Dr. Butler were inconsistent with the plaintiff's subsequent successful completion of her high school diploma and lack of difficulty in the transitional classes she was then taking to prepare her for college. *See, e.g., Gallant v. Astrue*, Civil No. 09-357-P-S, 2010 WL 2927263, at *2 (D. Me. July 20, 2010) (rec. dec., *aff'd* Aug. 10, 2010) (administrative law judge supportably rejected conclusion of sole expert who assessed claimant's mental RFC that it would be best if she had no work with the

---

[3] Nor did the administrative law judge err in relying in part on Dr. Butler's status as a one-time consultant. He noted that she did not have the benefit of subsequent information that he reasonably considered material to assessment of the severity of the plaintiff's mental impairments. *See* Record at 14.

8

public when claimant had subsequently worked successfully as a part-time bartender, a job that inherently entails interaction with the public, for at least 18 months).[4]

Nor did the administrative law judge err in drawing a negative inference from the plaintiff's lack of complaint to her treating providers regarding her asserted social difficulties. *See, e.g., Moody v. Colvin,* No. 1:12-cv-281-GZS, 2013 WL 3944287, at *6 (D. Me. July 31, 2013) ("The administrative law judge was competent, without benefit of expert assistance, to determine that [an expert] opinion did not square with other evidence of record and, accordingly, was speculative.").[5] In any event, the administrative law judge also relied on "the evidence in the record, including the testimony of the [plaintiff] at the hearing," to conclude that she was, "for the most part, capable of interacting independently, appropriately, effectively, and on a sustained basis with other individuals." Record at 15. The plaintiff does not explain how his reliance on her testimony for this proposition was misplaced. *See* Statement of Errors at 5.

For these reasons, despite the administrative law judge's rejection of the sole expert opinions of record, his finding that the plaintiff's mental impairments were nonsevere is supported by substantial evidence.

---

[4] At oral argument, the plaintiff's counsel contended that *Gallant* is distinguishable in that, rather than working for 18 months as a bartender, his client merely attended school one day a week with a goal of obtaining a job at home that would permit her to work whatever hours she could and lie down when needed. Nonetheless, the principle is the same. In *Gallant*, an administrative law judge reasonably found an 18-month part-time stint as a bartender inconsistent with a consultant's finding that it would be best if the claimant did not work with the public. *See Gallant*, 2010 WL 2927263, at *2. Here, the administrative law judge reasonably found the successful completion of a high school degree at night school and performance of transitional classes without difficulty inconsistent with the Butler restrictions. Moreover, the testimony to which the plaintiff points seemingly reflects a desire to accommodate physical, rather than mental, restrictions. *See* Record at 35 (plaintiff wanted to be able to stand and lie down at will); *see also id*. at 57 (asked if she had any concerns about doing the transcription job, plaintiff testified that if she could not do it on a given day, it would put her behind financially, because the more hours she could get, the better the pay; when then asked if anything about her impairments would potentially impact her ability to do the job, she stated, "Just from the sitting too long.").

[5] The plaintiff cites *Tucker v. Barnhart*, No. 06-27-B-W, 2006 WL 3519309 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006), for the proposition that an administrative law judge does not have the ability to make such interpretations and assumptions. *See* Statement of Errors at 5. *Tucker* is distinguishable. There, the administrative law judge not only ignored expert opinions regarding the claimant's mental RFC but also failed "even to hint at the basis for his finding with respect to mental [RFC]." *Tucker*, 2006 WL 3519309, at *3. Here, the administrative law judge addressed the Butler and Haskell opinions and explained why he chose not to credit them. In addition, *Tucker* did not involve drawing a negative inference from lack of complaint to treating providers. *See generally id*.

### B. Step 4: RFC Determination

The plaintiff next contends that the administrative law judge reached a flawed RFC determination when he omitted to assess any limitations stemming from her mental impairments and wrongly discounted her allegations of disabling back and hernia pain. *See* Statement of Errors at 10-14. For the reasons stated above, the administrative law judge did not err in omitting mental limitations. The plaintiff's challenge to the back and hernia pain findings is, in effect, a challenge to the administrative law judge's credibility finding. As she acknowledges, *see id*. at 13, such findings generally are due deference, *see, e.g., Frustaglia v. Secretary of Health & Human Servs*., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."). She falls short of demonstrating that the court should disturb that finding in this case.

The plaintiff contends that none of the specific reasons given for discounting her complaints of disabling back and hernia pain withstands scrutiny. *See* Statement of Errors at 10-14; Record at 17. Her counsel noted at oral argument, for example, that although the administrative law judge pointed out that there was limited focus on her back or hernia pain after she had just broken both ankles, *see* Record at 17, that was hardly surprising and, hence, an invalid basis on which to discount her pain complaints. She further contends, *inter alia*, that the administrative law judge (i) gave undue weight to a notation by Dr. Long that her back pain was "stable," ignoring evidence that she complained of increasing back/leg pain, leading to further testing and a new diagnosis of osteopenia of the spine, and (ii) mischaracterized her prescribed

treatment for that condition as conservative, ignoring evidence that Dr. Long ruled out surgery as an option. *See* Statement of Errors at 11-12; Record at 17, 311, 495, 745, 747-48.

The plaintiff's counsel contended at oral argument that, as a result, the administrative law judge had failed to build a logical bridge from the evidence to his conclusions. *See, e.g., Kimball v. Astrue*, No. 07-115-B-W, 2008 WL 449847, at *2 n.3 (D. Me. Feb. 14, 2008) (rec. dec., *aff'd* Mar. 5, 2008) ("[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [courts'] review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to her conclusion.") (citation and internal quotation marks omitted).

However, as the commissioner points out, *see* Opposition at 10-11, the plaintiff ignores evidence regarding her daily activities that the administrative law judge discussed in discounting the opinions of treating nurse practitioner Grant that was relevant to his credibility assessment, *see* Record at 19; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [y]our daily activities[.]").

The administrative law judge noted that the plaintiff reported to Grant that she could lift 10 pounds and, although her legs, back, and neck would get stiff after sitting for two hours when she was attending classes, she could relieve the stiffness by walking about the room a couple of times. *See* Record at 19. He observed that such activity comports with a sedentary exertional level, taking into account normal breaks. *See id*. He noted that the plaintiff also reported that she was walking her dogs every day for 1.5 miles, and was "comfortable walking[.]" *Id*.

These findings, which the plaintiff does not challenge, are in themselves sufficient to support the credibility finding. *See, e.g., Swain v. Astrue,* No. 2:10-cv-325-DBH, 2011 WL 2559538, at *5 (D. Me. June 27, 2011) (rec. dec., *aff'd* July 15, 2011) ("Even if the plaintiff's

challenges to these three findings by the administrative law judge were credited and the findings excluded, the opinion includes sufficient discussion to satisfy the requirement that a credibility assessment be supported by substantial evidence.").

In any event, as counsel for the commissioner observed at oral argument, the plaintiff does not point to evidence that the osteopenia diagnosed in March 2012 caused particular restrictions.

The plaintiff, hence, falls short of demonstrating reversible error in the administrative law judge's assessment of the credibility of her back and hernia complaints.

### C. Step 5: Transferable Skills

At step 5, the administrative law judge relied on the testimony of a vocational expert that a person with the plaintiff's RFC and other characteristics, including skills acquired in the performance of her past relevant work as a pharmacy technician, could perform the jobs of telephone solicitor and answering service operator. *See* Record at 20-21, 59-60. The vocational expert testified that the plaintiff had transferable skills in the form of "basic recordkeeping skills" and "verbal and communications skills that could potentially transfer." *Id.* at 59.

The plaintiff correctly notes that, absent a finding of transferable skills, she would have been deemed disabled pursuant to the Grid as of her 50th birthday. *See* Statement of Errors at 15-16; Grid § 201.14 (person age 50 with a high school education who is limited to sedentary exertional capacity and has no transferable skills is disabled). She argues that the "skills" identified by the vocational expert are not transferable skills but, rather, aptitudes. *See* Statement of Errors at 17.

Social Security Ruling 82-41 ("SSR 82-41") defines a "skill" as follows:

A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired

through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, reprinted in *West's Social Security Reporting Service* Rulings 1975–1982, at 848-49.

The plaintiff notes that, in *Kramer v. Astrue*, No. 1:10-cv-207-JAW, 2011 WL 1158234 (D. Me. Mar. 25, 2011) (rec. dec., *aff'd* Apr. 28, 2011), this court found that an administrative law judge erred in relying on a vocational expert's testimony that a claimant had acquired transferable skills of performing a variety of duties, dealing with people, performing effectively under stress, and making judgments and decisions, which were in the nature of "traits that would be welcome in an individual performing any job" and "too vague to constitute particular skills which are transferable." Statement of Errors at 17; *Kramer*, 2011 WL 1158234, at *2-*3 (footnote, citation, and internal quotation marks omitted).

The plaintiff argues that, like the skills at issue in *Kramer*, communication skills and basic recordkeeping skills are not abilities acquired as a result of performing an occupation above the unskilled level. *See* Statement of Errors at 18. She notes, by way of example, that the duties of the unskilled job of Cashier II include recomputing or computing bills, itemized lists, and tickets showing amounts due, using an adding machine or cash register, making change, cashing checks, issuing receipts or tickets to customers, recording amounts received, and preparing reports of transactions. *See id.*; Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. Rev. 1991) ("DOT") § 211.462-010. She adds that the vocational expert testified that the identified skills "are skills that are readily easily learned." Statement of Errors at 18 (quoting Record at 60).

The commissioner disagrees, contending that the skills at issue here are much more specific than those at issue in *Kramer* and noting that SSR 82-41 describes, as transferable skills, "typing, filing, tabulating and posting data in record books, preparing invoices and statements, [and] operating adding and calculating machines[.]" Opposition at 13 (quoting SSR 82-41 at 851). She cites *Daniels v. Astrue*, 854 F. Supp.2d 513 (N.D. Ill. 2012), for the proposition that "verbal and numerical recording and record keeping knowledge" qualify as skills rather than traits. *Id*. (quoting *Daniels*, 854 F. Supp.2d at 528).

At oral argument, counsel for the commissioner acknowledged that the foregoing authorities address whether basic recordkeeping, not verbal and written communication, qualify as "skills." She argued that recordkeeping, alone, suffices in this case because she believed that the vocational expert had testified that recordkeeping was one of the most important skills that would transfer. The vocational expert testified, however, that with respect to the two jobs that he had identified, telephone solicitor and answering service operator, communication/writing skills were the most transferable. *See* Record at 60 ("It's the communication skills, and there are writing skills that would be most transferable."). He did not testify that basic recordkeeping was an important transferable skill for purposes of the two jobs at issue or any other jobs. *See id*. at 59-63.[6]

---

[6] In any event, my research suggests that communication can be considered a "skill," rather than a "trait," for purposes of SSR 82-41 at higher skill levels than that achieved by the plaintiff. *Compare* Record at 60 (vocational expert's testimony that plaintiff had past work with a Specific Vocational Preparation, or SVP, level of 3, so that the skills were "relatively easily learned") *with Albors v. Secretary of Health & Human Servs*., 817 F.2d 146, 148 (1st Cir. 1986) ("Of course, the majority of all workers do have to think, communicate, and deal with other persons, at least to some small degree, and thus at that minimal level, basic thinking and communication ma[y] not technically be skills, as that term is used in the regulation. But the VE [vocational expert] was testifying with respect to claimant's past job which required claimant to visit clients daily, to supervise supervisors, and to prepare reports."); *Parrott v. Astrue*, 493 Fed. Appx. 801, 805 (7th Cir. 2012) ("We conclude that the advanced communication and supervisory skills that [the claimant] would have developed as a park-district director are vocational skills within the meaning of the Social Security Act and could be transferred to other jobs.") (citing, *inter alia*, *Albors*).

14

Therefore, even assuming *arguendo* that basic recordkeeping qualifies as a skill, the commissioner failed to meet her Step 5 burden that the plaintiff had acquired sufficient transferable skills to perform the two jobs on which the administrative law judge relied. On this basis, reversal and remand are required.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **_VACATED_** and the case **_REMANDED_** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of July, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge